469 S.E.2d 645

**Judith S. KOFFLER, Plaintiff Below, Appellant,**

v.

**CITY OF HUNTINGTON, a West Virginia Municipal Corporation, Defendant Below, Appellee.**

No. 23110.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 6, 1996.

Decided March 22, 1996.

---

Jack H. Vital, III, Lockwood, Egnor & Vital, Huntington, for Appellant.

James A. Dodrill, Law Offices of Dwane L. Tinsley, Charleston, for Appellee.

McHUGH, Chief Justice:

Plaintiff Judith S. Koffler instituted this negligence action in the Circuit Court of Cabell County after she sustained injuries while riding her bicycle in an alley located in the City of Huntington. Plaintiff now appeals an order entered March 31, 1995 which granted the City's motion for summary judgment.[1] This Court has before it the petition for appeal, all matters of record and the briefs and arguments of counsel. For the reasons stated below, the order of the circuit court is reversed.

## I

The facts of this case are, for the most part, not in dispute. On June 20, 1992, plaintiff, in the City of Huntington visiting a friend, had ridden her bicycle to a local bank. Upon completing her business there, plaintiff rode her bicycle into the "4 1/2 Alley," intending to go "riding around." Plaintiff testified that while she was riding in the alley, a vehicle approached her from the rear, at which time she rode "to the left, or at least toward the middle instead of staying on the extreme right[.]" Not realizing there was two-way traffic in the alley, plaintiff was surprised when a second automobile subsequently approached her from the front, on the left side of the alley. According to plaintiff, she "did whatever [she] could to try to avoid getting into that car's way and yet, trying to avoid the car that was coming behind [her]." Consequently, plaintiff rode her bicycle into the center of the alley and over a storm drain grate. As she rode over the grate, the front tire of her bicycle dropped between the grate's parallel slats, became lodged there, stopping the bicycle and throwing plaintiff forward, over the handlebars. As a result of this accident, plaintiff sustained injuries to her face and other parts of her body.

On or about June 30, 1993, plaintiff instituted this action for damages against the City of Huntington (hereinafter "City"), alleging, *inter alia*, that at the time of plaintiff's accident, the City "owned, operated, controlled, managed and/or maintained" the alley where the accident took place and that the City "had a duty to maintain said premis-

---

1. Plaintiff filed a motion for relief from final summary judgment, pursuant to Rule 60(b) of the West Virginia Rules of Civil Procedure.

Though a hearing thereon was held on April 4, 1995, the record before us provides no indication that the trial court ever ruled on this motion.

es in a reasonably safe condition for the persons, such as ... Plaintiff, that were reasonably expected to use said alleyway[.]" Plaintiff specifically alleged, *inter alia*, that the City negligently and carelessly "placed and/or allowed to be maintained in said alleyway a grating, the slats of which were farther apart than a bicycle tire, and which grating would allow a bicycle tire to fall through the slats of the grating. The grating was designed in such a manner so that it had no cross members which would preclude the bicycle tire from falling through the area between the slats of the grating."

Following the March 17, 1995 hearing on the City's previously-filed motion for summary judgment, the circuit court granted the City's motion and made the following relevant conclusions of law:

### B. THE QUESTION OF IMMUNITY

This action involves a claim for injury against a political subdivision of the State of West Virginia. The question of immunity, therefore, arises pursuant to the *Governmental Tort Claims and Insurance Reform Act.* In short, the *Act* specifically excludes this tort claim from the several immunities contained within it.[2] The City is 'liable for injury, death or loss to persons or property caused by its negligent failure to keep ... alleys ... open, in repair, or free from nuisance ...' [*W.Va.*] *Code,* § 29–12A–4(c)(3).

### C. THE STANDARD OF CARE

Since the City cannot avail itself of the several immunities afforded by the *Act*, the question necessarily becomes whether the City, in light of the undisputed facts, negligently failed to keep the 4 1/2 Alley 'open, in repair, or free from nuisance' with regard to [plaintiff]. Road design or maintenance liability in bicycle accident cases is fairly straight forward, and the road owner

(here, the City) is liable for an accident **if the road is not reasonably safe for persons using the road in an ordinary fashion.** *Roux v. Department of Transportation,* 169 Mich.App. 582, 426 N.W.2d 714 (1988). The duty to maintain the roadway reasonably safe and fit for vehicular travel does not extend to bicycle travel. In granting the defendant City's motion for summary judgment, this Court concludes, as a matter of law, that the appropriate standard of care is based upon the defendant City's duty to maintain and repair the roadway for **vehicular travel.** Thus, the alleged defect must be unreasonably dangerous to a vehicle not a bicycle.

    . . . .

In the case at bar, [plaintiff] cannot demonstrate, by her own evidence and testimony, that the alleged defect in the Alley was unreasonably dangerous to vehicles. In fact, her evidence demonstrates just the opposite, i.e., the spacing between the grates might have been too wide for her narrow bicycle tire, but the drain cover is hardly unreasonably dangerous to vehicles traversing the 4 1/2 Alley.

(footnote added and emphasis provided).

Plaintiff now appeals the March 31, 1995 order granting the City's motion for summary judgment.

### II

At issue is the circuit court's interpretation of *W.Va.Code,* 29–12A–4(c)(3) [1986], which provides:

*Political subdivisions*[3] *are liable for injury,* death, or loss *to persons* or property *caused by their negligent failure to keep* public roads, highways, streets, avenues, *alleys,* sidewalks, bridges, aqueducts, viaducts, or public grounds *within the politi-*

---

**2.** *See generally W.Va.Code,* 29–12A–1, *et seq,* The Governmental Tort Claims and Insurance Reform Act, which "grants broad, but not total, immunity from tort liability to political subdivisions of the State." *O'Dell v. Town of Gauley Bridge,* 188 W.Va. 596, 600, 425 S.E.2d 551, 555 (1992). Though the legislature has "specified seventeen instances in which political subdivisions would have immunity from tort liability[,] W.Va.Code, 29–12A–5(a)[,]" this case is not one of those instances. *Id.*

**3.** *See W.Va.Code,* 29–12A–3(b) and (c) [1986], in relevant part:

(b) 'Municipality' means any incorporated city, town or village and all institutions, agencies or instrumentalities of a municipality.

(c) 'Political subdivision' means any ... municipality[.]

cal subdivisions open, in repair, or free from nuisance, except that it is a full defense to such liability, when a bridge within a municipality is involved, that the municipality does not have the responsibility for maintaining or inspecting the bridge.

(emphasis and footnote added). As indicated in its order granting the City's motion for summary judgment, the circuit court concluded, as a matter of law, that while the City has a duty to maintain the 4 1/2 Alley so that it is reasonably safe and fit for *vehicular* travel, "the standard is not one of maintenance of the . . . alley so that it is reasonably safe for **bicycles**[.]" (emphasis provided).

■ This Court has held that " '[a] circuit court's entry of summary judgment is reviewed *de novo.*' Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994)." Syl. pt. 1, *Hose v. Berkeley County Planning Commission*, 194 W.Va. 515, 460 S.E.2d 761 (1995). *See* syl. pt. 1, *Miller v. Whitworth*, 193 W.Va. 262, 455 S.E.2d 821 (1995). We find that the circuit court erroneously resolved the question of law before it.

■ Our review of *W.Va.Code*, 29–12A–4(c)(3) [1986] is controlled by the following traditional principle of statutory analysis: " ' "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syllabus Point 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968).' Syl. pt. 1, *Peyton v. City Council of Lewisburg*, 182 W.Va. 297, 387 S.E.2d 532 (1989)." Syl. pt. 3, *Hose, supra.* The plain language of *W.Va.Code*, 29–12A–4(c)(3) [1986] does not support the circuit court's conclusion that plaintiff must "demonstrate, in order to recover, that the alleged defect in the Alley (the spacing between the grates in the drain cover) was unreasonably dangerous to **vehicles**, i.e., automobiles, not bicycles." (emphasis provided). Indeed, we find the analysis upon which this conclusion was based to be flawed in several respects.

■ As support for its legal conclusion that the City has a duty to maintain the 4 1/2 Alley in a reasonably safe condition for vehicular travel but not bicycle travel, the circuit court relied almost exclusively on the Michigan case of *Roux v. Department of Transportation*, 169 Mich.App. 582, 426 N.W.2d 714 (1988), in which a bicyclist was injured when he hit a "defective area" on the shoulder of the road on which he was riding. The applicable statutory provision in *Roux* provides, in pertinent part:

'Any person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him from such governmental agency. . . . The duty of the state and the county road commissions to repair and maintain highways, and the liability therefor, shall extend only to the improved portion of the highway designed for vehicular travel[.]'

*Id.* at 716 (quoting M.C.L. § 691.1402 and M.S.A. § 3.996(102)) (emphasis added). The Court of Appeals of Michigan determined that under this statute, the defendant's duty to maintain the improved portion of the highway so that it is reasonably safe and fit for vehicular travel depends, not upon the injured party's status as motorist or bicyclist, but upon the *location* at which he was injured. *Id.* The court then concluded that, on remand, "the appropriate standard of care shall be based on defendant's duty to maintain and repair the shoulder for vehicular travel. Thus, [in order for the injured bicyclist to recover,] the alleged defect must be unreasonably dangerous to a vehicle, not a bicycle." *Id.* at 716–17.

In that the language of *W.Va.Code*, 29–12A–4(c)(3) [1986] differs significantly from the aforementioned Michigan statute, the circuit court erroneously used *Roux* for the reasoning of the decision in the case now before us. *W.Va.Code*, 29–12A–4(c)(3) [1986], which provides that "[p]olitical subdivisions are liable for injury . . . to persons . . . caused by their negligent failure to keep . . . alleys . . . open, in repair, or free from nuisance[,]" does *not* predicate recovery by an injured bicyclist such as plaintiff upon proof that the City negligently failed to keep the 4 1/2 Alley open, in repair, or free from nuisance *for vehicles* or *for vehicular travel.*

If a political subdivision's duty to keep its public roads and alleys open, in repair, and free from nuisance extended exclusively to vehicles or vehicular travel, our Legislature would have included language to that effect in *W.Va.Code*, 29–12A–4(c)(3) [1986]. *See O'Dell, supra.*

Additionally, we point out that it was error for the circuit court to resort to various statutory definitions of the term "vehicle" as further support of its summary judgment order. Though the circuit court concluded that "West Virginia, like Michigan, specifically excludes bicycles from the definition of the term 'vehicle[,]' [W.Va.] Code, §§ 17–1–4 [4], 17B–1–1 [5]," neither the term "vehicle" nor any derivation thereof appears in *W.Va.Code*, 29–12A–4(c)(3) [1986]. (footnotes added). Accordingly, resort to statutory definitions of the term "vehicle" for purposes of interpreting *W.Va.Code*, 29–12A–4(c)(3) [1986] was unwarranted.

■ Under *W.Va.Code*, 29–12A–4(c)(3) [1986], political subdivisions are liable for injury, death, or loss to persons or property caused by their negligent failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, or free from nuisance, except that it is a full defense to such liability, when a bridge within a municipality is involved, that the municipality does not have the responsibility for maintaining or inspecting the bridge. A political subdivision's duty to keep its public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds open, in repair, or free from nuisance does not extend exclusively to vehicles or vehicular travel. Accordingly, the City may be liable for plaintiff's injuries if plaintiff can demonstrate that such injuries were caused by the City's negligent failure to keep the 4 1/2 Alley open, in repair, or free from nuisance for bicycle travel.[6] *See* syl. pt. 2, *Wehner v. Weinstein*, 191 W.Va. 149, 444 S.E.2d 27 (1994) (" ' " 'Ques-

---

4. *W.Va.Code*, 17–1–4 [1925] provides:

'Vehicle' shall mean and include any mechanical device for the conveyance, drawing or other transportation of persons or property upon the public roads and highways, whether operated on wheels or runners or by other means, except those propelled or drawn by human power or those used exclusively upon tracks.

5. *W.Va.Code*, 17B–1–1 [1990] provides, in relevant part:

The following words and phrases when used in this chapter shall, for the purpose of this chapter, have the meanings respectively ascribed to them in this article:

(a) *Vehicle.*—Every device in, upon, or by which any person or property is or may be transported or drawn upon a public highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks[.]

We note that the introductory paragraph of this statute expressly states that the words and phrases used in Chapter 17B, entitled "Motor Vehicle Driver Licenses," *"for the purpose of this chapter,* have the meanings respectively ascribed to them in this article[.]" The statute at issue in this case, *W.Va.Code*, 29–12A–4(c)(3) [1986], is clearly not part of Chapter 17B.

6. We note that plaintiff contends that the City is further liable for her injuries under *W.Va.Code*, 17–10–17 [1969], which provides, in relevant part, that "[a]ny person who sustains an injury to his person ... by reason of any ... alley ... in any incorporated city ... being out of repair due to the negligence of the ... incorporated city ... may recover all damages sustained by him by reason of such injury in an action against the ... city ... in which such ... alley ... may be[.]" Plaintiff did not allege the City's liability under *W.Va.Code*, 17–10–17 [1969] in response to the City's motion for summary judgment. Rather, plaintiff first raised this issue in its motion for relief from summary judgment which, as we indicated earlier, was not ruled upon by the circuit court. *See W.Va.R.Civ.P.* 60(b) and n. 1, *supra*. Because plaintiff's arguments under *W.Va.Code*, 17–10–17 [1969], and the City's response thereto, were neither raised, argued nor considered by the circuit court on summary judgment, the subject of this appeal, they are not reviewable by this Court: " ' " 'This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." Syllabus Point 2, *Sands v. Security Trust Co.*, 143 W.Va. 522, 102 S.E.2d 733 (1958).' Syl. pt. 2, *Duquesne Light Co. v. State Tax Dept.*, 174 W.Va. 506, 327 S.E.2d 683 (1984), *cert denied*, 471 U.S. 1029, 105 S.Ct. 2040, 85 L.Ed.2d 322 (1985)." Syl. pt. 2, *Crain v. Lightner*, 178 W.Va. 765, 364 S.E.2d 778 (1987).

Similarly, in its brief to this Court, the City argues, for the first time, that plaintiff was merely a licensee to whom the City was not obliged to provide against dangers arising out of the existing condition of the alley inasmuch as plaintiff went upon the alley "subject to all the dangers attending such conditions." Syllabus, *Hamilton*

tions of negligence, due care, proximate cause and concurrent negligence present issues of fact for jury determination when the evidence pertaining to such issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them.' Syl. pt. 1, *Ratlief v. Yokum*, [167 W.Va. 779], 280 S.E.2d 584 (1981), *quoting*, syl. pt. 5, *Hatten v. Mason Realty Co.*, 148 W.Va. 380, 135 S.E.2d 236 (1964)." Syllabus Point 6, *McAllister v. Weirton Hosp. Co.*, 173 W.Va. 75, 312 S.E.2d 738 (1983).' Syllabus Point 17, *Anderson v. Moulder*, 183 W.Va. 77, 394 S.E.2d 61 (1990).")

## III

For reasons discussed herein, the March 31, 1995 order of the Circuit Court of Cabell County is hereby reversed.

Reversed.

*v. Brown*, 157 W.Va. 910, 207 S.E.2d 923 (1974). The City's argument regarding premises liability will likewise not be considered on appeal where such arguments were neither raised nor argued below. *See Crain* at syl. pt. 2.

Finally, the City maintains that plaintiff was not making lawful use of the alley as she, admittedly, was riding her bicycle in the center of the alley at the time of the accident, in violation of Huntington Codified Ordinance 313.05 (1995), which provides, in relevant part: "(a) Every person operating a bicycle upon a roadway shall ride as near to the right side of the roadway as practicable, exercising due care when passing a standing vehicle or one proceeding in the same direction." It is the City's contention that a street is not out of repair unless the City has permitted it to become unsafe for *ordinary* and *lawful* use. Syl. pt. 3, *Carder v. City of Clarksburg*, 100 W.Va. 605, 131 S.E. 349 (1926), *overruled on other grounds, Long v. City of Weirton*, 158 W.Va. 741, 214 S.E.2d 832 (1975). In that plaintiff was not lawfully using the alley at the time of the accident, the City contends it is, therefore, not liable for her injuries. We cannot agree with the City's position. Plaintiff's own negligence is a question of fact for jury resolution. *See* syl. pt. 10, *Anderson v. Moulder*, 183 W.Va. 77, 394 S.E.2d 61 (1990) ("Whether and to what extent the plaintiff in a civil action was contributorily negligent are ordinarily questions of fact to be resolved by the jury.").