488 S.E.2d 406

**Sue Ellen COSTILOW, Administratrix of the Estate of David Lee Jett, Deceased, Plaintiff Below, Appellant**

v.

**ELKAY MINING COMPANY, a West Virginia Corporation; Cecil L. Walker Machinery Co., a West Virginia Corporation; Caterpillar Tractor Co., a California Corporation; and Indiana Mills & Manufacturing, Inc., an Indiana Corporation, Defendants Below, Appellees.**

No. 23570.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 5, 1997.

Decided March 14, 1997.

Dissenting Opinion of Justice Maynard July 17, 1997.

Norman W. White, Shaffer & Shaffer, Madison, for Appellant.

Thomas V. Flaherty, David S. Givens, Flaherty, Sensabaugh & Bonasso, Charleston, for Appellee, Elkay Mining Company.

PER CURIAM:

This action is before this Court upon an appeal from the final order of the Circuit Court of Logan County, West Virginia, entered on December 6, 1995. The action concerns the work-related death of David Lee Jett and is based upon the statutory "deliberate intention" exception to the immunity of employers from civil liability provided by the West Virginia workers' compensation system. *W.Va.Code*, 23–4–2(c)(2) [1991]. The appellant, Sue Ellen Costilow, Administratrix of the Estate of David Lee Jett, contends that the circuit court committed reversible error in granting the motion of Jett's employer, Elkay Mining Company, for summary judgment.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated below, this Court is of the opinion that the appellant submitted sufficient evidence to the circuit court to demonstrate the existence of a genuine issue of material fact with regard to the statutory exception. Accordingly, the final order is reversed, and this action is remanded to the circuit court for trial.

It should be noted that the appellant's claims against the other named appellees, Cecil I. Walker Machinery Co., Caterpillar Tractor Co. and Indiana Mills & Manufacturing, Inc., have been resolved or settled. Consequently, those appellees are no longer involved in this action.

I

The accident resulting in David Lee Jett's death occurred on August 8, 1991, at Elkay's Rum Creek Coal Preparation Plant in Logan County. Jett, a bulldozer operator with seventeen years of experience, was an eleven-year employee of Elkay at the plant, and his duties included the maintenance of various refuse piles located on Elkay's premises. On August 8, Jett was scalping vegetation with his bulldozer from the top of a steep slope for the purpose of obtaining soil for a nearby refuse pile. While on the slope, Jett lost control of the bulldozer, and it overturned, falling down a 67% grade and resulting in fatal, crushing injuries to Mr. Jett. As the record indicates, Jett had been a safety-conscious employee who regularly attended training and safety meetings.

It is undisputed that no one at Elkay instructed Jett to ascend the particular slope

where the accident occurred. Moreover, although various non-supervisory employees of Elkay observed Jett at the top of the slope, no one witnessed the accident. Mr. Jett and the bulldozer were found thereafter. Nevertheless, the record indicates that scalping slopes or embankments was part of Jett's customary duties as an Elkay employee, and, in fact, he had scalped slopes of similar steepness and of similar vegetation in the past.

Moreover, the record indicates that Jett performed his work for Elkay in a virtually unsupervised manner. As Elkay's plant superintendent, John C. Bell, Jr., explained:

> David Lee Jett received less supervision than many other Elkay Mining employees. I was given the impression by upper management that specific supervision was not necessary because he was the employee at the Rum Creek Preparation Plant most knowledgeable about the operations of the upper and lower refuse piles and the proper and necessary functions of a dozer operator in maintaining those refuse piles.[1]

In fact, although the accident of August 8, 1991, occurred during regular working hours, Jett possessed a key to the plant gate and, at times, worked alone. As Jett's widow, Ester Jett, stated in an affidavit dated September 14, 1995:

> Prior to David Jett's death, he had his own key to the refuse area where he was killed. He could work at anytime he desired to do so.... Prior to David Jett's death, he did on numerous occasions work on Sundays and other times when he was not scheduled to do so and worked by himself at the refuse area.... David Jett was not required to obtain permission from Elkay to enter the area and work. I personally observed him working on the refuse area alone, with absolutely no one else present.

In June 1993, this action was instituted, and the appellant based her claim against the Elkay Mining Company upon the statutory "deliberate intention" exception to employer immunity found in *W. Va.Code,* 23–4–2(c)(2) [1991]. Specifically, *W. Va.Code,* 23–4–2(c)(2)(ii) [1991], states that immunity from suit may be lost by an employer where the following facts are shown:

> (A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

> (B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;

> (C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

> (D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and

> (E) That such employee so exposed suffered serious injury or death as a direct and proximate result of such specific unsafe working condition.[2]

Following the taking of various depositions and the submission of other documents to the circuit court, Elkay filed a motion for summary judgment pursuant to Rule 56 of the

---

1. The above statement of John C. Bell, Jr. is contained in his affidavit of September 27, 1995. In a prior affidavit dated January 3, 1995, Bell stated, in part: "Mr. Jett worked without supervision. I was given the impression by upper management that Mr. Jett was not to be supervised."

2. Although *W. Va.Code,* 23–4–2 was amended in 1994, those amendments are not relevant to this action. In any event, the specific language of *W. Va.Code,* 23–4–2(c)(2)(ii) [1991], set forth above, has remained unchanged.

*West Virginia Rules of Civil Procedure*, asserting that the appellant failed to present sufficient evidence upon the above five requirements to establish a "deliberate intention" action. The circuit court conducted a hearing upon the motion and granted summary judgment for Elkay pursuant to the final order of December 6, 1995.

As reflected in the transcript of the hearing upon the motion, the circuit court found that the appellant failed to present sufficient evidence under *W. Va.Code,* 23–4–2(c)(2)(ii) [1991], with regard to requirement (B), concerning a subjective realization by the employer of a specific unsafe working condition, and requirement (D), concerning the intentional exposure of an employee to such condition. With regard to both requirements, the circuit court emphasized that Elkay had neither instructed Jett to work upon, nor exposed him to, the particular slope where the accident occurred. Upon the entry of summary judgment, this appeal followed.[3]

## II

As the petition for appeal indicates, the appellant relies upon *Mayles v. Shoney's Inc.,* 185 W.Va. 88, 405 S.E.2d 15 (1990), a case involving a "deliberate intention" action under *W. Va.Code,* 23–4–2(c)(2). In *Mayles,* a restaurant employee was severely burned in a fall while carrying a large container of hot grease down a grassy slope to a disposal unit. In upholding a jury verdict in the amount of $220,000 for the employee, this Court determined, in *Mayles,* that the evidence sufficiently supported the verdict upon each of the five requirements of the statute.

In particular, we noted, in *Mayles,* that the specific unsafe working condition was the manner in which the hot grease was taken from the restaurant, i.e., by carrying it in an open container down the grassy slope to the disposal unit. Moreover, the subjective realization by the employer requirement of the statute was satisfied by the fact that company managers were aware of the unsafe manner used to dispose of the hot grease, and of the potential risks involved, yet failed to take remedial action. We further noted, in *Mayles,* that the violation of a safety rule or standard requirement was satisfied by evidence to the effect that industry standards mandated that hot grease be transported in a tightly sealed container. The intentional exposure to the unsafe working condition requirement was satisfied by evidence that the company failed to take remedial action, even though another employee had been similarly injured in the past and even though employee complaints about the practice used to dispose of grease had been received. Finally, with regard to the requirement concerning proximate cause, this Court noted, in *Mayles,* that the employee had presented sufficient evidence linking his injuries to the unsafe working condition.

---

**3.** Pursuant to *W. Va.Code,* 23–4–2(c)(2)(iii)(B) [1991], summary judgment is authorized where a circuit court finds that "one or more of the facts required to be proved by the provisions of subparagraphs (A) through (E) of the preceding paragraph (ii) do not exist." As stated above, the circuit court found that the appellant failed to present sufficient evidence with regard to requirements (B) and (D) of *W. Va.Code,* 23–4–2(c)(2)(ii) [1991].

However, indicating that the scalping procedure used upon the slope in question was unsafe, the circuit court determined that there was a genuine issue of material fact with regard to requirement (A) of the statute, concerning the existence of a specific unsafe working condition. Moreover, with regard to requirement (C), concerning the violation of a safety rule or industry standard, the circuit court stated: "There would be a genuine issue of fact with regard to element No. 3 as to whether or not operating that dozer under those circumstances would be a violation

of [a] safety statute or practice common within the industry."

Although the circuit court did not elaborate upon the latter determination, the evidence submitted by the appellant suggested that, in view of the steepness of the slope where the accident occurred, industry standards indicated that the vegetation should have been pre-cut prior to the use of the bulldozer for the collection of soil for the refuse pile. Industry standards also indicated that, under the circumstances, Jett's bulldozer could have been "anchored" to another bulldozer while working upon the slope.

Finally, the circuit court made no determinations with regard to requirement (E) of the statute, concerning serious injury or death being proximately caused by the specific unsafe working condition.

Accordingly, of the five requirements of *W. Va.Code,* 23–4–2(c)(2)(ii) [1991], only requirements (B) and (D) are before this Court.

■ Thus, in syllabus point 2 of *Mayles,* this Court held: "A plaintiff may establish 'deliberate intention' in a civil action against an employer for a work related injury by offering evidence to prove the five specific requirements provided in *W. Va.Code,* 23–4–2(c)(2)(ii) [1983]." *See also* syl. pt. 2, *Sias v. W–P Coal Company,* 185 W.Va. 569, 408 S.E.2d 321 (1991); syl. pt. 2, *Blevins v. Beckley Magnetite,* 185 W.Va. 633, 408 S.E.2d 385 (1991).

In contrast to the circumstances in *Mayles,* however, involving a jury trial, the appellant herein asks this Court to review the granting of a summary judgment. The appellant contends that the summary judgment was inappropriate because, having established a *prima facie* case with regard to requirements (A), (C) and (E) of *W. Va.Code,* 23–4–2(c)(2)(ii) [1991], *see* n. 3, *supra,* the appellant also established such a case with regard to requirements (B) and (D). Specifically, the appellant asserts that this action should be remanded for trial because the record contains evidence indicating (1) that Jett's customary duties included the scalping of slopes and embankments with a bulldozer, (2) that Elkay knew that Jett had, in the past, scalped slopes of similar steepness and of similar vegetation to the slope involved in the accident and (3) that Jett was allowed to work virtually unsupervised to the extent that Elkay, through a pattern of acquiescence, failed to account for his safety, in spite of the obvious hazards. According to the appellant, therefore, the evidence of record established questions of fact under both requirement (B), concerning subjective realization, and requirement (D), concerning intentional exposure, of *W. Va.Code,* 23–4–2(c)(2)(ii) [1991].

Elkay contends, on the other hand, that, inasmuch as it had no knowledge that Jett had ascended the slope in question and placed himself in danger, the accident was not foreseeable. Thus, according to Elkay, no case of "deliberate intention" was established.

■ In syllabus point 1 of *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994), this Court held that "[a] circuit court's entry of summary judgment is reviewed *de novo.*"

*See also* syl. pt. 9, *Riffe v. Armstrong,* 197 W.Va. 626, 477 S.E.2d 535 (1996); syl. pt. 1, *Koffler v. City of Huntington,* 196 W.Va. 202, 469 S.E.2d 645 (1996). More specifically, syllabus point 4 of *Painter* states:

Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential. element of the case that it has the burden to prove.

*See also* syl. pt. 1, *Schultz v. Consolidation Coal Company,* 197 W.Va. 375, 475 S.E.2d 467 (1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 767, 136 L.Ed.2d 713 (1997); syl. pt. 3, *Miller v. Whitworth,* 193 W.Va. 262, 455 S.E.2d 821 (1995).

In *Cline v. Jumacris Mining Company,* 177 W.Va. 589, 355 S.E.2d 378 (1987), a "deliberate intention" action was brought under *W. Va.Code,* 23–4–2, and the employer moved for summary judgment. The trial court granted the motion. This Court reversed, however, and remanded the action for a jury trial. As the *Cline* opinion states: "This Court believes that in the case now under consideration further development of the facts relating to the character of the employer's knowledge and conduct is desirable before a final resolution of the appellant's claim is appropriate." 177 W.Va. at 591, 355 S.E.2d at 380.

Similarly, in *Bell v. Vecellio & Grogan, Inc.,* 191 W.Va. 577, 447 S.E.2d 269 (1994), a "deliberate intention" action brought specifically under *W. Va.Code,* 23–4–2(c)(2)(ii) [1991], this Court reversed a directed verdict granted in favor of the employer. In *Bell,* a construction worker was severely injured in an accident involving a defective boom-crane. This Court held that the directed verdict was precluded because the injured worker had "sufficiently satisfied" the five requirements of the statute. 191 W.Va at 583, 447 S.E.2d at 275. Specifically, with regard to both requirement (B), concerning subjective realization, and requirement (D), concerning intentional exposure, this Court, in *Bell,* emphasized the fact that the record included evidence indicating that the employer's su-

pervisory personnel were "well aware of the crane's defects." 191 W.Va. at 583, 447 S.E.2d at 275.

■ In syllabus point 3 of *Blevins v. Beckley Magnetite,* 185 W.Va. 633, 408 S.E.2d 385 (1991), this Court held:

> ·Given the statutory framework of W.Va. Code §§ 23–4–2(c)(2)(i) and (ii), (1983, 1991) which equates proof of the five requirements listed in W.Va.Code § 23–4–2(c)(2)(ii) with deliberate intention, a plaintiff attempting to impose liability on the employer must present sufficient evidence, especially with regard to the requirement that the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and the strong probability of serious injury or death presented by such specific unsafe working condition. This requirement is not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious injury or death presented by that condition. Instead, it must be shown that the employer actually possessed such knowledge.[4]

(footnote added).

■ Here, a review of the record demonstrates that the appellant presented sufficient evidence to establish a question of fact under both requirement (B), concerning a subjective realization by the employer of a specific unsafe working condition, and requirement (D), concerning the intentional exposure of an employee to such condition. The appellant's evidence indicates that, even if Elkay did not know that Jett had ascended the slope in question, it did consider the scalping of slopes and embankments with a bulldozer part of Jett's customary duties. Moreover, the appellant's evidence indicated that Elkay had actual knowledge that Jett had, in the past, scalped slopes of similar steepness and of similar vegetation to . the

slope involved in the accident. As Billy Ronald Cline, a foreman for Elkay, testified:

Q. Had you ever seen Mr. Jett scalping an embankment of a similar grade or steepness with similar vegetation on it prior to this task he was doing when he got killed?

A. I probably had.

Q. Can you give me an idea where on this refuse area?

A. Yes, on the refuse area.

Q. Where on the refuse area had he performed scalping in a similar circumstance?

A. From the head of the hollow down.

In addition, the record contains evidence to the effect that Jett was allowed to work virtually unsupervised, even to the extent that he possessed a key to the plant gate which enabled him to work alone at various times. That evidence, especially in view of the longevity of Jett's employment with Elkay, results in a reasonable inference that Jett, who was not a part of management, was permitted to work at the plant with unrestrained judgment. As the September 27, 1995, affidavit of John C. Bell, Jr., quoted above, stated: "I was given the impression by upper management that specific supervision was not necessary[.]"

Clearly, under the circumstances of this action, the appellant should be permitted to include, as part of her "deliberate intention" theory, an argument to a jury that Elkay, through a pattern of acquiescence, failed to account for Jett's safety, in spite of the obvious hazards. Specifically, in the narrow context of reviewing the propriety of summary judgment, this Court is of the opinion that the appellant has satisfied requirements (B) and (D) of the statute through evidence to the effect that Elkay knew of Jett's unsafe working conditions and of the high degree of risk involved and, nevertheless, continued in that knowledge for a significant period of time without taking remedial action. The

---

4. In *Blevins,* this Court discussed requirement (B) of the statute, concerning subjective realization. In *Blevins,* an employee, cleaning up ore spillage, was injured when his arm was caught in a moving conveyor-pulley system. In setting aside a jury verdict for the employee, this Court noted that requirement (B) had not been satisfied because, *inter alia,* the evidence indicated that the employer had instructed its workers to turn the system off before entering the area to clean up spillage. 185 W.Va. at 640, 408 S.E.2d at 392.

evidence of the appellant as to Elkay's knowledge, as thus represented in the above testimony of Billy Ronald Cline, goes to requirement (B) of the statute, concerning subjective realization. The showing of a pattern of acquiescence and the failure to take remedial action goes to requirement (D) of the statute, concerning intentional exposure. *See Mayles, supra.*

Accordingly, this Court is of the opinion that the circuit court committed error in concluding that the appellant failed to present sufficient evidence under requirement (B), concerning subjective realization, and requirement (D), concerning intentional exposure, with regard to the motion of Elkay for summary judgment. Rather, the evidence demonstrates a question of fact as to both of those requirements. As noted above, the remaining requirements of *W. Va.Code*, 23–4–2(c)(2)(ii) [1991], i.e., (A), (C) and (E), are not before this Court. Upon all of the above, therefore, the final order of the Circuit Court of Logan County, entered on December 6, 1995, is reversed, and this action is remanded to that court for trial.

Reversed and remanded.

STARCHER, J., deeming himself disqualified, did not participate in the decision of this case.

MAYNARD, Justice, dissenting:

The great white shark named *"Mandolidis"* is alive and well and on the prowl again in the sea of commerce in West Virginia. Just when you thought it was safe to go back in the water! Such is the result of the majority opinions in *Costilow v. Elkay Mining,* No. 23570 (March 14, 1997) and *Blake v. Skidmore,* No. 23400 (July 16, 1997).

In *Costilow* I dissent because I believe a reasonable jury could not come close to inferring from the evidence presented below that Elkay had a subjective realization of any unsafe working condition, or that Elkay made a deliberate and conscious management decision to expose Mr. Jett to that condition. While it is generally a judgment

call whether or not a set of facts constitutes deliberate intention under W.Va.Code § 23–4–2(c)(2)(ii), the facts presented in this case clearly do not. Obviously, this Court's decision to reverse the granting of summary judgment by the court below is based on its own preferences; the decision has nothing to do with the applicable law found in W.Va. Code § 23–4–2(c)(2)(ii). In short, the Court is determined to utilize its own preferred standard of gross negligence, and not that of deliberate intention as articulated by the Legislature.

The Legislature has made clear the purpose of the Workers' Compensation system clear by declaring:

> the establishment of the workers' compensation system ... is intended to remove from the common law tort system all disputes between or among employers and employees regarding the compensation to be received for injury or death to an employee except as herein expressly provided ... *the immunity established in sections six and six-a [§§ 23–2–6 and 23–2–6a], article two of this chapter, is an essential aspect of this workers' compensation system* [.]

W.Va.Code § 23–4–2(c)(1) (Emphasis added). In response to this Court's holding in *Mandolidis v. Elkins Indus., Inc.,* 161 W.Va. 695, 246 S.E.2d 907 (1978), the Legislature narrowed the standard of deliberate intention by amending W.Va.Code § 23–4–2 (1994) in order to make it more difficult to prove a cause of action under W.Va.Code § 23–4–2.[1] According to W.Va.Code § 23–4–2(c)(1):

> [T]he Legislature intended to create a legislative standard for loss of that immunity of more narrow application and containing more specific mandatory elements than the common law tort system concept and standard of willful, wanton and reckless misconduct ... it was and is the legislative intent to promote prompt judicial resolution of the question of whether a suit prosecuted under the asserted authority of this

---

1. In *Mayles v. Shoney's, Inc.* 185 W.Va. 88, 405 S.E.2d 15 (1990), however, this Court commented that the Legislature's effort to narrow the parameters of civil liability in W.Va.Code § 23– 4–2(c)(2)(ii) had actually broadened the concept of such liability. I take issue with this characterization because I think the Legislature did, in fact, narrow liability.

section is or is not prohibited by the immunity granted under this chapter.

Further, W.Va.Code § 23–4–2(c)(2)(iii)(B) states in part:

Notwithstanding any other provision of law or rule to the contrary, and consistent with the legislative findings of intent to promote prompt judicial resolution of issues of immunity from litigation under this chapter, the court shall dismiss the action upon motion for summary judgment if it finds, pursuant to Rule 56 of the Rules of Civil Procedure that one or more of the facts required to be proved by the provisions of subparagraphs (A) through (E) of the preceding paragraph (ii) do not exist[.]

In light of the fact that the appellant failed completely to present sufficient evidence with respect to the subjective realization and intentional exposure elements of a deliberate intention action, the circuit court correctly granted summary judgment on behalf of Elkay. In reversing the circuit court, this Court disregards all of the statutory language quoted above.

The facts of this case reveal that Mr. Jett was a competent and knowledgeable employee, and that Elkay allowed him to exercise a great deal of independent judgment regarding his work. Also, it is undisputed that Mr. Jett was not requested by anyone at Elkay to scalp the slope on which the accident occurred, nor did he inform anyone that he was intending to scalp that area.

W.Va.Code § 23–4–2(c)(2)(ii)(B) and (D) clearly mandate that an employer have a subjective realization of the unsafe working condition, and expose an employee to the unsafe working condition intentionally before losing the immunity to suit afforded by the Workers' Compensation system. Further, as stated in Syllabus Point 3 of the majority opinion, the requirement of subjective realization "is not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious injury or death presented by that condition. Instead, it must be shown that the employer *actually possessed such knowledge.*" (Citation omitted) (Emphasis added). The majority inexplicably concludes, however, that

"under the circumstances of this action, the appellant should be permitted to include, as part of her 'deliberate intention' theory, an argument to a jury that Elkay, through a pattern of acquiescence, failed to account for Jett's safety, in spite of the obvious hazards." Such reasoning ignores the fact that a jury would be much less apt to creatively evade the statutory language than this Court. Such reasoning disregards W.Va. Code § 23–4–2(c)(2)(iii)(B), concerning the appropriateness of summary judgment when the five elements of deliberate intention are not present. Such reasoning frustrates judicial economy by mandating the time and expense of a trial when, plainly, one is not merited.

Similarly, this Court's decision in *Skidmore* guarantees that another meritless action, rightfully dismissed by the circuit court, will now go to trial. I dissent because I believe that the appellants failed to produce sufficient evidence to establish that the appellee acted with deliberate intention to defeat the appellee's motion for a directed verdict.

A lack of security measures in a convenience store in rural West Virginia, which has the lowest crime rate in the nation, simply does not constitute a specific unsafe working condition with a high degree of risk and a strong probability of serious injury or death. This is especially so in light of the apparent lack of evidence that the convenience store has a history of being robbed. The evidence presented by the appellant below, while not proving deliberate intention, does show two things. First, it shows that the appellee may have violated the standard of care for security measures in the convenience store industry, which might make him guilty of mere negligence. Second, the evidence shows that a plaintiff can get anyone to testify that the five elements constituting deliberate intention is present in any particular set of circumstances. In the majority opinion, the Court manages to take evidence of poor security and turn it into full-blown deliberate intention, and expects that a reasonable jury may be able to do the same. The Court forgets, however, that the average jury may not be as skilled at bootstrapping.

Perhaps the majority here is motivated by the brutal set of facts in this case and disturbed that an innocent pregnant woman could be so victimized by violent crime and not receive compensation. I am likewise troubled and very sympathetic to the sad fact that crimes such as this one happen thousands of times a year and the victims receive no compensation. The old saw that "hard cases make bad law" is still true, and the Court's effort to fit the circumstances of this case into the deliberate intention exception is a perfect example.

I suspect that the majority is also motivated here by its historical antagonism to the immunity provision of the Workers' Compensation Act. This Court, like most other courts, seems to be plagued by the notion that somewhere, someone actually enjoys immunity to tort liability. Nevertheless, this immunity was created by the Legislature and is an integral part of this state's carefully crafted workers' compensation system, therefore, this Court should learn to live with it. Because I believe that in the above-mentioned opinions the Court improperly invokes the deliberate intention exception, I respectfully dissent.